DRISKELL
*vs.*
HANKS.
HANKS
*vs.*
DRISKELL.

---

## Driskell *vs.* Hanks.

## Hanks *vs.* Driskell.

**Case 56:**

*18m855*
*91 553*

*18bm855*
*f136 25*

### APPEALS FROM ANDERSON CIRCUIT.

**PET. EQ..**

1. If real estate be devised by the father to an infant, who dies in infancy, leaving neither brother nor sister. the estate passes to the uncles and aunts of the infant on the father's side. But real estate which descended to such infant from a brother, does not pass to uncles and aunts, but to the mother, brothers, and sisters living at the death of such infant.
2. A widow who is left in possession of land belonging to the husband at his death, does not hold adversely to the heirs or devisees, unless it be openly and notoriously declared to be held adversely to the title of those who have right.
3. A deed conveying land does not pass a right to rents previously due for the use of the same, unless by express terms.
4. A widow, entitled to dower, is not accountable for rents until dower is assigned her. She has a right to enjoy the mansion house and' plantation where she is left on the death of the husband, free of any charge for rent until dower is assigned, or suit brought for that purpose. The Revised Statutes have no application to this case, as the death of the husband occurred before they took effect:
5. In suits for the partition of land, it is proper that the suit be brought in the county where the testator or intestate died and administration was taken under the *Civil Code, sec.* 97.

[The facts of the case are set out in the opinion of the court.—REP.]

DRISKELL.
vs.
HANKS.

HANKS
vs.
DRISKELL.

*James Harlan*, for Driskell—

Argued—1. That upon the death of Andrew J. Holeman, in 1850, his moiety of the land devised to him by his father, passed in equal portions to his mother and surviving brother, under the statute of 1796; and that act does not exclude the mother because the deceased son obtained the estate by *devise* from his father—so ruled in *Dunn vs. Lafferty*, (6 J. J. Marshall, 47.)

2. That upon the death of William L. Holeman, which was after the Revised Statutes took effect, his interest in the land, excepting that portion which was derived from Andrew J. Holeman, passed to his brother, James Henry Driskell, which would give to Mrs. Driskell thirty-seven and a half hundredths, and her son, sixty-two and a half hundredths; giving to Mrs. Driskell her dower in the whole.

3. Had the court of Anderson county any jurisdiction over the land lying in Mercer county? *Section 93* of the Code contains this provision: " That for the ' recovery of real property, or an estate or interest ' therein, or for the possession of real property, the ' action must be brought in the county in which the ' subject of the action, or some part thereof, is sit- ' uate."

It is not pretended that the land lying in Anderson county adjoins that lying in Mercer county. The terms used in the Code applies to cases where the county line runs through the lands; and in such cases the court of either county has jurisdiction. This is an action to recover real property, and have plaintiff's interest set apart to him, and he put in possession thereof; and the circuit court adjudged the possession to him, and a writ to give it to him.

4. Rents have been adjuged against Mrs. Driskell to the amount of $500. That is palpably erroneous. Mr. Holeman died under the old constitution and old statutes. Her rights as widow accrued under the laws then in force, and she was entitled to hold the mansion house and plantation free of

rent until her dower was assigned. (*Chaplin vs. Simmons*, 7 *Monroe*, 338.) The first *section of the act* of '96 expressly says that the widow shall tarry in the mansion house, "and the plantation thereto belonging, rent free, until her dower is assigned her." (1 *Stat. Law*, 573, *sec.* 1.)

DRISKELL
*vs.*
HANKS.
HANKS
*vs.*
DRISKELL.

If she was not entitled thus to hold, it was the business of those interesed to have had her dower assigned to her. If the heirs were infants it was the duty of the county court to appoint guardians for them.

Can there be any doubt that the Revised Statutes, upon the subject of dower, can change her rights? Those rights become vested under the old law, and cannot be changed without her consent.

5. Upon the subject of champerty. The right of those under whom Hanks claims were always denied. The purchase by Hanks was a speculation, and the case comes within the spirit and meaning of the acts relating to champerty. But for such laws the quiet and honest yeomanry would be continually annoyed by men going through the country and buying pretended titles to land and bringing suits to recover it. They are laws of repose, and intended to prohibit land jobbers and speculators from annoying honest people.

For the foregoing reasons, the judgment is erroneous and prejudicial to the rights of Mrs. Driskell and son, James Henry, and should re reversed.

*W. W. Penny*, on the same side—

I contend that the judgment of the circuit court is erroneous, and to the prejudice of Mrs. Driskell and her child, James Henry Driskell. The children of James J. Holeman (Andrew J. and William L.) took his property by devise, and not by descent. He and his son, Andrew J., died before the adoption of the Revised Statutes, and his will was duly published and recorded. Near two years before that event transpired, he adopted the law of *descents* and *dis-*

DRISKELL,
vs.
HANKS.
HANKS
vs.
DRISKELL.

*tributions,* then in force, to be part of his will, just as fully and completely, as if the provisions of those statutes had been copied into the instrument. He did not refer to, and adopt as part of his will, any law on the subject of descents, that the legislature at a future day might enact, but he certainly had reference to the law in force at the time his will was executed. When the testator died, his two sons took his property under the will, (subject to the widow's dower) and when Andrew J. died, his interest descended to his surviving brother, William L., and his mother; and when William L. died, his interest descended to his half brother, James Henry Driskell and his mother; and according to the law in force at the time of the execution of the will, and at the time of his death, and when his son, Andrew J. died. Hanks and his vendors of course, could have taken no part of the estate, real or personal, which was devised by James J. Holeman, and hence it results that the judgment giving Hanks any portion of the land, is erroneous.

The court also erred in giving rents against the widow:

1. Because she was entitled to the whole mansion farm rent free till the assignment of dower.

2. The amount adjudged against her for rent was unauthorized by any proof in the record.

3. The commissioners were directed to ascertain what would be the reasonable annual rents for the farm since the death of William L. Holeman, and the court assumes that he died as early as October 1st, 1852, without any proof in the record to sustain any such assumption, and gives judgment against her for $500, for the rent since the death of William L. Holeman.

I contend that if she had only been entitled to dower in the land she would not be chargeable with rents till her dower was assigned. Such was the law at the death of her husband, and her right to dower was not impaired or restricted by any provis-

DRISKELL
*vs.*
HANKS.
HANKS
*vs.*
DRISKELL.

ion in her husband's will; and her right to hold the mansion farm rent free till the assignment of dower, was a vested right of which she could not be divested by any subsequent legislation. The Revised Statutes, in the repealing clause, expressly excepts all rights established, accrued or accruing before they took effect. See page 127–8. Hanks does not ask for rents in his petition, and the title papers under which he claims to have purchased the interest of the testator's brothers and sisters, does not transfer to him any supposed claim for rent which they might have had against the widow, and if she is liable for rents, the vendors of Hanks can also sue for and recover rents against her, and his judgment would be no bar to their claim for rents before they sold to Hanks, for all the title papers bear date long subsequent to October 1st, 1852, which is the date from which the court below charges her with rents; and why the court below charges her with rents from the death of her son, William L. Holeman, I cannot perceive.

The court below should have dismissed Hanks' petition, because his purchase was champertous—the widow and children were in the actual possession of the farm in Anderson county, claiming it as their own at the time he purchased; and his petition alleges that she, as the natural guardian of her children, was setting up some claim to the land. Whenever a party is in *possession of land*, that he *claims, no matter by what title or right, or whether by any*, the champerty act protects him, and renders a sale by another claimant, void. (See *Dubois vs. Marshall*, 3 *Dana*, 338.)

The Anderson circuit court had no jurisdiction over the tract of land lying in Mercer county; it did not lie adjacent to the tract in Anderson.

A reversal is asked.

*Thomas N. Lindsey*, for Hanks—

The questions are, what interests passed to Mrs. Driskell and her child, the half blood? What inter-

DRISKELL
vs.
HANKS.
HANKS
vs.
DRISKELL.

ests passed to the uncles and aunts, and were acquired by Hanks by his purchase?

It is conceded Mrs. Driskell is entitled to dower, but contended that she did not inherit any of the estate which passed by will to the children of her first husband, nor that her son by Driskell acquired any interest as a half blood on the side of the mother.

Under the 5th and 6th sections of the old statutes it no doubt was the rule that the mother would have inherited from her infant son, William, half of the interest that descended to him from Andrew J. Holeman. But it is supposed and contended that the Revised Statutes, *secs.* 8, *and* 9, intended to change the rule.

The 8th and 9th *secs.* seem to intend that the mother's side of the house shall not inherit estate that descended from the fathers nor the father's side, where the inheritance came from the mothers, until it is found that the inheritance is to pass to kindred as remote as the grand-father, then both sides inherit equally.

It is contended these sections deprive the wife from inheriting any part of the estate through her infant sons, the Holemans—that when Andrew died his entire interest passed to William J. his brother; and when William J. died his entire interest passed to the uncles and aunts through whom Hanks claims, they being next of kin. That young Driskell inherited nothing because he was only a half blood by the mother and the estate came from the father of the young Holemans, and never vested in the mother.

It will be seen, moreover, that the arrangement of the 3d section of the act defining what half bloods shall take, is placed immediately after the provisions directing the course of descents where the *propositus* or ancestor is an adult, and not after the sections which direct how the inheritance of persons dying infants shall pass, which arrangement it will be seen, is different in the old statutes.

DRISKELL
*vs.*
HANKS.
HANKS
*vs.*
DRISKELL.

If this view is correct, which is urged so to be, the special judge erred, and the cross appeal of Hanks should prevail, and the case be reversed at his instance—which is asked.

*J. F. Willis & Dandridge W. Kavanaugh*, on the same side—

Argued—1. That the land devised by James J. Holeman to his two sons, then infants, passed on the death of one to the other, and on the death of the other, passed to his uncle and aunts on the side of the father from whom the land came—this is our position.

2. The circuit court gave the one-half of the land, that which by the death of the first son devolved upon the second son, to the mother and her son by a second husband, the half brother of the last son of the first testator; of this we complain, as a decision in conflict with the *9th section of the Revised Statutes*, *page* 280. We contend that the Revised Statutes has changed the course of descent which was recognized by this court in the case of *Clay vs. Cozens*, (1 *Monroe*, 75,) limiting the descent of the real estate of an infant to that side of the house from which it came, not only to the father, if living, according to the 8th section, but likewise to the kindred of the father. (*Talbot vs. Talbot*, 177 *B. Monroe*, 9.) This case is referred to to show the intent of the legislature. The circuit court erred in its construction of the *9th section of the Revised Statutes*.

2. The principle of the *9th section of the Revised Statutes* was not embraced by the act of 1785, but it was engrafted by the act of 1796, and extended by the 9th section. If, however, the children of Mr. Holeman inherit from their half brother, the son of a different father, then is the intent of the 9th section frustrated.

3. There is no ground for the charge of champerty against Hanks. One heir may buy out another without being guilty of champerty.

We ask a reversal.

DRISKELL
vs.
HANKS.
HANKS
vs.
DRISKELL.

Feb. 10, 1858.

Judge SIMPSON delivered the opinion of the court.

James J. Holeman died in August, 1850, and devised his estate to his two infant children, subject to the dower interest of their mother.

One of the children died shortly after the death of his father, an infant, and unmarried. By the law of descents then in force, his mother was excluded from inheriting any part of his real estate, inasmuch as it was derived by purchase from his father, and the whole of it, being one undivided half of the real estate devised, descended to his brother Lewis J. Holeman.

The mother of these children afterwards intermarried with Henry Driskell, by whom she had two children, named James Henry and David Driskell. In the fall of 1852, some time between the month of August and the 1st of November of that year, Lewis J. Holeman, the other child of the testator, James J. Holeman, also died an infant and unmarried. At the time of his death, his mother had but one child by her last marriage, the other was subsequently born; and afterwards her last husband, Henry Driskell, died. She continued in the possession of the real estate of her first husband from the time of his death until the commencement of the present action.

The testator, James J. Holeman, had no father or mother living at the time of the death of his last child, Lewis J. Holeman. He had however, seven brothers and sisters, who claimed the real estate of said Lewis J. Holeman, as his uncles and aunts on his father's side, six of whom sold and conveyed their interests therein to the plaintiff, Thomas H. Hanks, who brought this action against the mother of said Lewis J. Holeman and her two children by the last marriage, for a partition of the land, one tract of which was in Anderson, and another tract in Mercer county.

The defendants denied the right of the plaintiff to any part of the land, and the widow insisted that it all belonged to her and her children, and that as

they had been in the adverse possession of it when it was conveyed to the plaintiff, that the deeds under which he claimed it were champertous and void, and did not invest him with any title.

The circuit court decided that upon the death of Lewis J. Holeman, one half of his estate descended to his mother, and his half brother, James H. Driskell; and that the other half descended to his uncles and aunts on his father's side, and rendered a judgment for a partition of the lands in both counties, according to that decision. The court also decided that the widow was liable for the rents of all the land, except the mansion house and curtilage, from the time of the death of her son, Lewis J. Holeman, until the time of the trial, and rendered a judgment against her for five hundred dollars on that account.

From that judgment both parties have appealed. The plaintiff in the court below contends that all the real estate of the infant, L. J. Holeman, upon his death, passed to his uncles and aunts on his father's side, and that no part of it descended to his mother and half brother. On the other side, it is contended that the widow was improperly charged with rents, she having a right under the law in force at the death of her first husband, to continue in the possession of the mansion house and plantation free of rent until dower was assigned her, which was never done.

On the part of the appellant, Hanks, the 9th section of the act of Descents, in the Revised Statutes, (*page* 280,) is relied upon as entitling the kindred on the part of the father to the whole of the infant's real estate. The infant's real estate at the time of his death, consisted of that which had been devised to him by his father, and that which he had inherited from his deceased brother. The section relied upon, only applies to the real estate belonging to the infant, the title to which he had derived by gift, devise, or descent from one of his parents. It has no application to that which he derived by descent from his brother, nor could it be made to apply to it by any

DRISKELL
vs.
HANKS.
HANKS
vs.
DRISKELL.

1. If real estate be devised by the father to an infant, who dies in infancy, leaving neither brother nor sister, the estate passes to the uncles and aunts of the infant on the father's side. But real estate which descended to such infant from a brother, does not pass to uncles and aunts, but to the mother,

DRISKELL
vs.
HANKS.
HANKS
vs.
DRISKELL.

brothers and sisters living at the death of such infant.

2. A widow who is left in possession of land belonging to the husband at his death, does not hold adversely to the heirs or devisees, unless it be openly and notoriously declared to be held adversely to the title of those who have right.

3. A deed conveying land does not pass a right to rents previously due for the use of the same, unless by express terms.

4. A widow, entitled to dower, is not ac-

reasonable construction of the language used. That which has descended to him from his brother, he certainly did not derive title to by gift, devise or descent from his father, but whatever title he had to it, was derived from his brother and not from his father. One half of his real estate therefore, being that half which was devised to him by his father, passed on his death, to his uncles and aunts on his father's side. The other half, under the first section of the act, passed to his mother and his half brother, who was living at the time of his death. On this point, therefore, the judgment of the court below was correct.

On behalf of the defendants in the circuit court, it is contended first, that the deeds under which the plaintiff claimed the land in contest were void under the act against champerty. But as the widow was in possession under the same title, and had a right to an undivided interest in the land, her possession will be presumed to be consistent with her title, and amicable to the right of the other owners, unless an adverse holding of an open and notorious character be established by proof. There was no proof in this case of an adverse holding by her, and consequently the deeds under which the plaintiff claimed were not embraced by the champerty act.

In the next place, it is contended on her part, that the plaintiff was not entitled to a judgment against her for the rents of the farm on which she resided, inasmuch as dower in her husband's estate had never been assigned her. In relation to the plaintiff's right to recover rents, it may be remarked, that the deeds under which he claims the land, do not transfer to him any right to the rents which had previously accrued, so that even if the defendant were liable for rents, he has not shown himself entitled to recover the amount adjudged him by the court below.

But there is in our opinion a still more fatal objection to the judgment against the widow for rents. Her husband died in 1850. As the law then was,

she had a right to remain in the possession of the mansion house and plantation on which it was situated, free of rent until dower was assigned her. This right she was not deprived of by the Revised Statutes, for besides the express reservation of all rights in the act by which they were adopted, we think it is evident, by the provision therein contained, in relation to the right of the wife in the husband's real estate, before dower is assigned her, that it was only intended to have effect in cases where the death of the husband occurred after the Revised Statutes took effect. The language of the provision is, (*page* 394,) that the wife shall be entitled to one third of the rents and profits of her husband's dowable real estate from his death until dower is assigned. Now, it is evident that this provision cannot be made to apply to cases where the husband died before the statutes were adopted, without giving to it a retrospective operation, which is not permissible, inasmuch as it is expressly provided by the act in relation to the construction of statutes, that no part of the revision is to be retrospective, unless expressly so declared. (*Revised Statutes*, page 190.)

The widow, therefore, was not liable for any rent for the plantation on which she resided before this action was commenced. But as the plaintiff admitted her right to dower, and prayed to have it assigned to her, and she claimed the land as belonging to herself and her children, and denied the plaintiff's right to any part of it, she ought to account for rents from that time until the plaintiff obtains possession of his part of it. One third of which rent, however, she will be entitled to as widow.

An objection has been made to the jurisdiction of the Anderson circuit court to make partition of the land in Mercer county. As however, the testator, James J. Holeman, resided in Anderson county at the time of his death, and his will was recorded in that county, and his children lived there at the time of their death, and their personal representative

VOL. XVIII.    55

DRISKELL
*vs.*
HANKS.
HANKS
*vs.*
DRISKELL.

countable for rents until dower is assigned her. She has a right to enjoy the mansion house and plantation where she is left on the death of the husband, free of any charges for rent until dower is assigned, or suit brought for that purpose.— The Rev. Stat. has no application to this case, as the death of the husband occurred before they took effect.

5. In suits for the partition of land, it is proper that the suit be brought in the county where the testator or intestate died and administration was taken

must have qualified there, if one has been appointed, we think that the Anderson circuit court had jurisdiction, under the 97th *section of the Code,* this being an action for the partition of real estate among the heirs of the infant Lewis J. Holeman, dec'd. It results therefore from these views, that the judgment of the court below is prejudicial to the widow, and that the plaintiff, Hanks, was not entitled to any more land than what he obtained by the decision of the court.

Wherefore, the judgment on the appeal of Hanks is affirmed. On the appeal of Driskell it is reversed, and cause remanded, with directions to ascertain the amount of rents for which the widow is responsible according to the principles of this opinion, and to render a judgment against her therefor.